Elizabeth A. Strange
First Assistant United States Attorney
District of Arizona

By: Jeffrey R. Borup
    Assistant United States Attorney
    District of Arizona
    Two Renaissance Square
    40 North Central Avenue, Suite 1800
    Phoenix, Arizona  85004-4408
    Arizona State Bar No. 027681
    Email: jeffrey.borup@usdoj.gov
    Telephone: (602) 514-7500

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE IN REM |
| $27,100.00 in United States | ) | |
| Currency, | ) | |
| | ) | |
| Defendant In Rem. | ) | |
| | ) | |

1

1

TABLE OF CONTENTS

2                                                                    Page

3    INTRODUCTION ................................................. 4

4    NATURE OF THE ACTION ......................................... 4

5    DEFENDANT IN REM ............................................. 5

6    JURISDICTION ................................................. 5

7    VENUE ....................................................... 6

8    BASIS FOR FORFEITURE ......................................... 6

9    SUMMARY OF FACTS ............................................. 7

10   FACTS ....................................................... 8

11     I. Airport Interdiction and Discovery of $27,100 ("Subject
          Property") ............................................. 8

12        A.  The Commercial Narcotic Interdiction Unit ("CNIU") ......... 8

13        B.  Airport Interview of Passenger, Codey Hawthorne ............ 10

14        C.  Questioning at the CNIU Office ............................. 13

15        D.  Canine Examination ........................................ 15

16        E.  Travel History ............................................ 17

17        F.  Wage Reports .............................................. 18

18        G.  Criminal History .......................................... 18

19     II. Seizure of the Subject Property for Forfeiture .......... 19

20     III. Administrative Claim Filed by Cody Hawthorne ........... 19

21   FIRST CAUSE OF ACTION ....................................... 19

22   SECOND CAUSE OF ACTION ...................................... 20

23   THIRD CAUSE OF ACTION ....................................... 22

24   FOURTH CAUSE OF ACTION ...................................... 23

FIFTH CAUSE OF ACTION ......................................... 25

NOTICE TO ANY POTENTIAL CLAIMANT ............................. 26

PRAYER FOR RELIEF ............................................ 28

VERIFICATION ....................... **Error! Bookmark not defined.**

INTRODUCTION

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture In Rem.

Plaintiff hereby alleges as follows:

NATURE OF THE ACTION

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an in rem legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This civil action in rem is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in, (2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4. Based upon the facts and circumstances herein set forth,

Plaintiff prays: (1) that process issue for an arrest warrant <u>in</u> <u>rem</u> for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DEFENDANT <u>IN REM</u>

5. The Defendant <u>in rem</u> consists of the following property:

- $27,100.00 (twenty-seven thousand one-hundred dollars) in United States currency.

(Hereinafter, the "subject property").

6. The subject property was seized on April 3, 2018, by the Phoenix Police Department ("PPD") Commercial Narcotic Interdiction Unit ("CNIU") based out of the Phoenix Sky Harbor International Airport, to which Drug Enforcement Administration ("DEA") Special Agent ("SA") William Neal is a member.

7. The subject property is currently in the custody of the United States Marshals Service.

JURISDICTION

8. This Court has subject matter jurisdiction:

a. Pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America; and

b. Pursuant to 28 U.S.C. § 1355(a) because this is an action

1   for forfeiture.

2     9.  This Court has <u>in rem</u> jurisdiction over the subject

3   property:

4      a. Pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or

5   omissions giving rise to forfeiture occurred in the District of

6   Arizona; and

7      b. Pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. §

8   1355(b)(1)(B)) because the subject property is located in the

9   District of Arizona.

10                VENUE

11    10. Venue is proper in this district:

12      a. Pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or

13   omissions giving rise to forfeiture occurred in the District of

14   Arizona; and

15      b. Pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. §

16   1355(b)(1)(B)) because the subject property is located in the

17   District of Arizona.

18            BASIS FOR FORFEITURE

19    11. The subject property is subject to forfeiture pursuant to

20   21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended

21   to be furnished" in exchange for a controlled substance or

22   listed chemical in violation of Title II of the Comprehensive

23   Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801,

24   *et seq.* (the "Controlled Substances Act"), (2) represents

"proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. <u>See</u> 21 U.S.C. § 881(a)(6).

12. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

13. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from "proceeds traceable" to "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

SUMMARY OF FACTS

14. On April 3, 2018, CNIU conducted an interdiction at the Phoenix Sky Harbor International Airport, which led to the discovery and seizure of $27,100 from Codey C. Hawthorne, a passenger traveling onboard American Airlines flight 5842 from

Houston, Texas, through Phoenix, Arizona, continuing on to San Francisco, California.

15. A police canine certified with the National Police Canine Association (NPCA) demonstrated a positive alert on the $27,100, indicating the presence of one of four odors she is trained to detect

16. Based upon the experience of CNIU officers, including DEA SA William Neal, and the totality of the circumstances further described below, DEA seized the $27,100 for forfeiture.

FACTS

I. Airport Interdiction and Discovery of $27,100 ("Subject Property")

    A. The Commercial Narcotic Interdiction Unit ("CNIU")

17. This Complaint describes an investigation conducted by members of the CNIU based out of the Phoenix Sky Harbor International Airport, to which DEA SA William Neal is a member.

18. The primary responsibility of the CNIU is to investigate crimes involving the use of commercial airlines and shipping companies to transport illegal drugs and drug proceeds.

19. Based upon experience of CNIU investigators and similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand locations for illicit drugs.

20. States such as Arizona and California are source locations

1   due to their close proximity to the border of Mexico and

2   established drug transportation routes.

3       21. Person(s) involved in the illegal drug trade, often hire

4   couriers to transport drugs and or proceeds from the sale of

5   drugs by utilizing commercial airlines and shipping companies.

6       22. In an effort to identify and disrupt potential drug and/or

7   money couriers related to drug organizations and criminal

8   syndicates, investigators utilize a variety of resources,

9   including confidential informants, suspicious flight

10  itineraries, other law enforcement agencies, and prior knowledge

11  of criminal activity or intelligence.

12      23. Factors that constitute suspicious flight itineraries

13  include airfare purchase at the counter immediately prior to

14  departure or short notice reservations for one-way travel,

15  sometimes paid in cash.

16      24. In addition, investigators know it is common for couriers

17  to utilize a third party credit card to purchase airfare and to

18  provide inaccurate or not in-service telephone numbers to

19  airline companies.

20      25. Couriers travel with minimal or no luggage and often

21  attempt to board the aircraft at the last possible moment.

22      26. Drug and/or money couriers utilize these techniques in an

23  attempt to conceal their identities from law enforcement and

24  minimize their exposure to commercial airlines.

B. Airport Interview of Passenger, Codey Hawthorne

27. On April 3, 2018, CNIU investigators received information regarding a passenger identified as Codey Cordell Hawthorne ("Hawthorne"), traveling onboard American Airlines flight 5842 from Houston, Texas, through Phoenix, Arizona, and continuing on to San Francisco, California.

28. Hawthorne purchased a one-way ticket within 24 hours of his travel.

29. Prior to meeting flight 5842, investigators conducted a criminal history check and learned that Hawthorne had prior drug arrests documented by the FBI.

30. Along with the criminal history, investigators obtained a physical description of Hawthorne.

31. Investigators met flight 5842 in Terminal 4 at Gate B-2, shortly before scheduled arrival.

32. As passengers deplaned, investigators observed a male exit the flight, who they believed to be, and later confirmed to be Hawthorne.

33. Hawthorne was consensually contacted by CNIU Detective Limmie Blaylock in a wide-open public walkway where his ability to leave the encounter was not obstructed.

34. DEA SA Neal observed the contact from a short distance away.

35. Detective Blaylock introduced himself as he displayed his

law enforcement credentials.

36. Upon request, Hawthorne produced his airline ticket and allowed investigators to confirm his identity.

37. Detective Blaylock explained his duties at the airport and informed Hawthorne the reason investigators wished to speak with him.

38. When asked about his ticket purchase, Hawthorne stated he purchased his ticket yesterday (04/02/2018).

39. Hawthorne further stated the purpose of his trip was to visit his Aunt in San Francisco.

40. When asked if he was carrying any weapons or illegal drugs, Hawthorne advised he was not carrying any weapons or illegal drugs.

41. When asked if he was carrying any large amounts of cash, Hawthorne replied, "[n]o sir."

42. Investigators asked a second time if he was traveling with any money.

43. Hawthorne stated he had approximately $5,000 in his pocket.

44. Hawthorne removed a bundle of cash wrapped with rubber bands from his right front pants pocket.

45. When asked if he had any other cash, Hawthorne removed a second bundle of cash, also wrapped with rubber bands, from the same pocket.

46. When asked how much the bundles contained, Hawthorne responded, between $5000.00 and $7,000.00.

47. Investigators asked if he had any money in the duffle bag he was carrying on his shoulder.

48. Hawthorne stated his duffle bag contained only clothing.

49. Hawthorne granted investigators consent to search his duffle bag.

50. Investigators observed that Hawthorne appeared nervous as SA Neal began to search his duffle bag.

51. When asked again if he had money in the duffle bag, Hawthorne again stated there was no money in his duffle bag.

52. During the search of Hawthorne's duffle bag, SA Neal located a brown book wrapped with rubber bands.

53. Between the pages of the book, SA Neal found a large amount of cash.

54. When asked if the money belonged to him, Hawthorne said, the money did belong to him.

55. When asked how much money was inside the book, Hawthorne said, $5,000, but quickly changed his response to, "$9,000."

56. Investigators asked why he was unsure about how much money he had inside the book.

57. Hawthorne advised he was not sure because his girlfriend put the book inside his duffle bag.

58. Hawthorne explained that his girlfriend hides his money

from him as a way to help him save.

59. When asked for a total amount of currency he was traveling with, Hawthorne changed the total several times.

C. Questioning at the CNIU Office

60. Hawthorne was cooperative during the contact with investigators, and agreed to accompany them to the CNIU office located within Terminal 4.

61. As they walked to the office, Detective Blaylock asked Hawthorne if he had prior arrests.

62. Hawthorne admitted to two prior arrests for possession of drugs.

63. Hawthorne provided investigators with his Texas driver's license and biographical information.

64. When investigators removed everything from Hawthorne's duffle bag, three cellular telephones were located.

65. When asked why he had so many cell phones, Hawthorne advised that one phone was cracked and no longer worked.

66. Hawthorne offered no further explanation for the remaining two cellular phones.

67. Investigators asked Hawthorne to verify the total amount of cash he had in his pockets.

68. Hawthorne again changed the amount to $8,000.

69. When asked Hawthorne to verify the total amount of cash inside the book found inside his duffle bag, Hawthorne said,

1   "$9,000 or $10,000."

2   70. Investigators asked Hawthorne for the total sum of

3   currency he was transporting.

4   71. Hawthorne stated he thought he only had money in his

5   pockets, and that he did not know his girlfriend had placed the

6   book containing currency in his duffle bag.

7   72. Hawthorne stated he paid for his airline tickets with his

8   "PrimeWay" Federal Credit Union Visa debit card.

9   73. When investigators asked why he was in possession of two

10  "PrimeWay" Visa cards, Hawthorne advised one card was his

11  personal account, and the other was his business account.

12  74. Hawthorne explained that for the past eight months, he and

13  his father Timothy Wayne Hawthorne, were co-owners of Hawthorne

14  Trucking Company.

15  75. Hawthorne advised that the business was in his name, but

16  his father drove the trucks for the company because Hawthorne

17  did not have a commercial driver's license.

18  76. Hawthorne reiterated that the purpose of his trip to San

19  Francisco was to give his girlfriend's Aunt Linda "some money."

20  77. Hawthorne was unable to provide Aunt Linda's last name.

21  78. Hawthorne changed his statement to say that Linda was his

22  girlfriend's mother, not her Aunt.

23  79. When asked why he needed to travel so far to give Linda

24  money instead of using Western Union or having his girlfriend

deposit the money in her mother's account, Hawthorne stated, he wanted to take a trip to California.

80. Hawthorne advised he was able to purchase a one-way ticket at a lower fare.

81. When asked if Linda knew he was traveling to San Francisco to deliver money to her, Hawthorne said, "yes", because he had recently sent her $200.

82. Investigators ask Hawthorne if he had previously sent money to Linda, why would he have not sent the money in the same manner on this occasion.

83. Hawthorne advised Linda was going to purchase a car, and that he wanted to see how Linda used the money. Hawthorne stated he intended to give Linda $6,000.

84. Hawthorne stated he had not worked for the past year and a half, and had not filed income tax.

85. When asked how he was able to save the money in his possession, Hawthorne stated he earned the money doing side jobs and selling cars.

86. When asked again how much money he was traveling with, Hawthorne responded, approximately $20,000.

87. Investigators note that when they initially contacted Hawthorne in the concourse, Hawthorne advised he was carrying a total of $5,000.

D. Canine Examination

88. Phoenix Police Detective Elizabeth Pool utilized her certified narcotics detection canine, Zadie, to examine the currency in Hawthorne's possession.

89. Zadie is a three-year-old Labrador/Pointer mix.

90. Detective Pool is Zadie's second handler.

91. Zadie is trained and certified to detect four odors: (1) marijuana, (2) cocaine, (3) heroin, and (4) methamphetamine.

92. Zadie is certified with the National Police Canine Association (NPCA), and was last certified January 2018.

93. If at any time during a search Zadie smells one of the four odors she is trained to detect, Zadie will alert with an active/passive alert at the area where she smells the odor.

94. The search/sniff was conducted on April 3, 2018 in an office occupied by Sergeant J. Cope, which is located within the main CNIU office.

95. Sergeant Cope's office included a desk, several filing cabinets, a trashcan and other miscellaneous items.

96. The main CNIU office contained multiple desks, filing cabinets and office equipment.

97. Detective Pool brought Zadie into the office and gave her the command to search/sniff.

98. Zadie exhibited no change in behavior during the "clearing" of both Sergeant Cope's office and the main CNIU office space.

99. Zadie was returned to her kennel.

100. Phoenix Detective A. Rodriguez placed the currency found in Hawthorne's possession inside a wood desk drawer within Sergeant Cope's cleared office area.

101. Detective Pool returned to the office with Zadie and gave her the command to search/sniff.

102. Zadie worked the main CNIU office area with no alerts.

103. As Zadie entered the Sergeant Cope's office and reached the drawer that contained the currency, Detective Pool observed Zadie's breathing increase and her behavior change.

104. Detective Pool recognized this behavior as a positive alert indicating Zadie smelled one of the four odors she is trained to detect.

E. Travel History

105. SA Neal learned that between September 13, 2017 and April 3, 2018, Hawthorne booked the following travel:

- 09/13/2017 – Oakland, California to Los Angeles, California
- 10/08/2017 – San Francisco, California to Houston Texas
- 10/05/2017 – Houston, Texas to Oakland, California
- 10/27/2017 – Houston, Texas to Oakland, California
- 10/31/2017 – Oakland, California to Houston Texas
- 11/20/2017 – Oakland, California to Houston Texas
- 12/30/2017 – Houston, Texas to Atlanta, Georgia

- 02/18/2018 - Los Angeles, California to Houston, Texas
- 03/13/2018 - Houston, Texas to Oakland, California
- 03/15/2018 - Oakland, California to Houston, Texas
- 03/15/2018 - Oakland, California to Houston, Texas
- 03/28/2018 - Houston, Texas to Oakland, California
- 03/29/2018 - Oakland, California to Phoenix, Arizona
- 03/30/2018 - Oakland, California to Houston, Texas
- 04/03/2018 -Houston, Texas to Phoenix, Arizona continuing to San Francisco, California (Interdicted by SA Neal and CNIU in Phoenix, AZ, flight record shows Phoenix to San Francisco not used)
- 04/03/2018 - Phoenix, Arizona to Houston, Texas
- 04/19/2018 - Houston, Texas to Los Angeles, California

F. Wage Reports

106. SA Neal requested and received an earnings history from the Texas Department of Public Safety, which revealed Hawthorne had no employer earnings recorded for 2017 or 2018.

G. Criminal History

107. Investigators conducted a criminal history check and learned that Hawthorne had prior drug arrests documented by the FBI.

108. Hawthorne was arrested on April 22, 2014 for felony possession of a controlled substance, unlawful carrying of a weapon, and forgery.

109. Hawthorne was also arrested April 19, 2017 for evading arrest, possession of marijuana (five pounds and greater), and unlawful carrying of a firearm.

II.  Seizure of the Subject Property for Forfeiture

110. CNIU agents, including DEA SA Neal, seized the subject property for forfeiture per DEA guidelines governing asset forfeiture.

111. CNIU released Hawthorne with no further incident.

III. Administrative Claim Filed by Cody Hawthorne

112. On June 4, 2018, DEA initiated administrative forfeiture proceedings against the subject property by mailing a Notice of Seizure, Information to Claimants, and CAFRA form to Hawthorne by certified mail.

113. In response to this notice, on June 21, 2018, DEA received a Claim filed by Hawthorne through attorney Donald W. Limbrick.

114. On June 29, 2018, the DEA referred this matter to the Phoenix office of the United States Attorney to initiate judicial forfeiture proceedings.

FIRST CAUSE OF ACTION

115. Plaintiff repeats and realleges the averments in paragraphs one through 114 as though fully set forth herein.

116. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange

for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. See 21 U.S.C. § 881(a)(6).

117. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6).

                    SECOND CAUSE OF ACTION

118. Plaintiff repeats and realleges the averments in paragraphs one through 114 as though fully set forth herein.

119. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under

18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

120. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

121. Pursuant to 18 U.S.C. § 1956:

> (3) Whoever, with the intent—
> (A) to promote the carrying on of specified unlawful activity;
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
> (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

122. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

123. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" See 18 U.S.C. § 1961(1)(A).

THIRD CAUSE OF ACTION

124. Plaintiff repeats and realleges the averments in paragraphs one through 114 as though fully set forth herein.

125. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

126. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

127. Pursuant to 18 U.S.C. § 1956:

> (3) Whoever, with the intent—
> (A) to promote the carrying on of specified unlawful activity;
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
> (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned

for not more than 20 years, or both.

128. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

129. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" See 18 U.S.C. § 1961(1)(A).

130. Section 1952(a) describes the following as an indictable act:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>  (1) distribute the proceeds of any unlawful activity; or
>  (2) commit any crime of violence to further any unlawful activity; or
>  (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

131. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]".

FOURTH CAUSE OF ACTION

132. Plaintiff repeats and realleges the averments in

paragraphs one through 114 as though fully set forth herein.

133. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 981(a)(1)(C) because it "constitutes or is derived from proceeds traceable" to "dealing in a controlled substance," a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

134. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. See 21 U.S.C. § 981(a)(1)(C)(2018).

135. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

136. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" See 18 U.S.C. § 1961(1)(A).

FIFTH CAUSE OF ACTION

137. Plaintiff repeats and realleges the averments in paragraphs one through 114 as though fully set forth herein.

138. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 981(a)(1)(C) because it "constitutes or is derived from proceeds traceable" to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign travel or transportation in aid of racketeering enterprises), a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

139. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. See 21 U.S.C. § 981(a)(1)(C)(2018).

140. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." See 18 U.S.C. § 1956(c)(7).

141. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" See 18 U.S.C. § 1961(1)(A).

142. Section 1952(a) describes the following as an indictable

act:

    (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
     (1) distribute the proceeds of any unlawful activity; or
     (2) commit any crime of violence to further any unlawful activity; or
     (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

18 U.S.C. § 1952(a).

    143. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]"

NOTICE TO ANY POTENTIAL CLAIMANT

    YOU ARE HEREBY NOTIFIED that if you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Fed. R. Civ. P. Supp. G. To avoid entry of default, a verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Fed. R. Civ. P. Supp. G(4)(b).

    An answer or motion filed under Fed. R. Civ. P. 12 must also be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed

in the caption above and a copy must be served upon the

undersigned Assistant United States Attorney at the address

provided in this Complaint.

This notice provision does not provide you with any legal

advice and is designed only to provide you with a general

understanding of these proceedings. Any statements made in your

claim or answer may be introduced as evidence against you in any

related or future criminal case. You should consult an attorney

to represent your interests in this matter, and note that a stay

of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a

result of the crime(s) giving rise to this civil action, you may

be entitled to petition for remission, mitigation, or

restoration under Title 28, Code of Federal Regulations

("C.F.R."), section 9.2. In lieu of filing a Claim with the

Court, you may promptly submit a letter outlining your interest

in the property to the undersigned Assistant United States

Attorney. Plaintiff will notify you when it has received your

letter, and further instructions may be provided upon conclusion

of this action. The United States Attorney General shall have

sole responsibility for disposing of petitions for remission or

mitigation with respect to property involved in a judicial

forfeiture proceeding under 18 U.S.C. § 981(d) and 21 U.S.C. §

881(d). If your status as a victim is contested, timely receipt

of your letter will not shield you from entry of default for

failing to file a proper claim with the Court.

   IF YOU ARE A LIENHOLDER, it is the policy of the United States

Attorney's Office to honor all claims received from legitimate

titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of

filing a claim with the Court, you may send a letter to the

undersigned Assistant United States Attorney outlining your

interest in the property, including: (1) the amount presently

owed on the lien; (2) a copy of the security agreement setting

forth your interest; and, (3) whether the owner is in default.

If your lien is sufficient, Plaintiff will notify you to verify

receipt of your letter. In the event of forfeiture, and to the

extent practicable, proceeds from the sale and disposition of

the subject property will be remitted to you in satisfaction of

the lien. As noted above, timely receipt of your letter will not

shield you from entry of default for failing to file a proper

claim with the Court.

PRAYER FOR RELIEF

   WHEREFORE, based upon the aforementioned facts and

circumstances, Plaintiff, United States of America, by and

through its undersigned counsel, and pursuant to Fed. R. Civ. P.

Supp. G(3)(b), respectfully, prays:

   1) That process issue for an arrest warrant in rem for the

subject property, which Plaintiff will execute in accordance

1    with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2        2) That due notice be given to all parties to appear and show

3    cause why forfeiture of the subject property to the United

4    States in accordance with the claims herein set forth should not

5    be decreed;

6        3) That this Court enter a judgment of forfeiture for the

7    subject property to the United States; and

8        4) That this Court grant Plaintiff all other relief as it may

9    deem just and proper, together with the costs and disbursements

10   of this action.

11       DATED this 19th day of September 2018.

12                              Elizabeth A. Strange
                                First Assistant United States Attorney
13                              District of Arizona

14                              By:s/ *Jeffrey R. Borup*
                                    Jeffrey R. Borup
15                                  Assistant United States Attorney

16                              Attorneys for Plaintiff
                                United States of America

17

18

19

20

21

22

23

24

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff**(s): **United States of America**

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

Plaintiff's Atty(s):

**Jeffrey Ryan Borup , Assistant United States Attorney**
**DOJ**
**40 N. Central Avenue**
**Phoenix, Arizona  85004-4408**
**6025147500**

**Defendant**(s): **$27,100.00 in United States Currency**

County of Residence: Maricopa

Defendant's Atty(s):

II. Basis of Jurisdiction:           **1. U.S. Government Plaintiff**

III. Citizenship of Principal Parties
**(Diversity Cases Only)**

Plaintiff:- **N/A**

Defendant:- **N/A**

IV. Origin :                            **1. Original Proceeding**

V. Nature of Suit:                  **625 Drug Related Seizure of Property 21 USC 881**

VI.Cause of Action:             **civil action in rem is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C)**

VII. Requested in Complaint

Class Action:**No**

Dollar Demand:**$27,100.00**

Jury Demand:**No**

VIII. This case **is not related** to another case.

**Signature:  s/Jeffrey R. Borup**

**Date:** <u>09/17/2018</u>

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

Revised: 01/2014

1                              VERIFICATION

2    State of Arizona        )
                             )   ss.
3    County of Maricopa      )
     _____ )

4

5     COMES NOW, before this honorable court, William Neal, Special

6    Agent with the U.S. Drug Enforcement Administration, and

7    pursuant to the provisions of 28 U.S.C. § 1746, respectfully, to

8    submit this Verification in support of the foregoing Verified

9    Complaint for Forfeiture In Rem.

10    Based upon reports and information known to me and/or

11   furnished to me by other law enforcement agents and government

12   representatives, I declare under penalty of perjury that the

13   foregoing document is true and correct.

14    EXECUTED this 19th day of September 2018.

15                              SA William Neal

16                              _____
                                William Neal
                                Special Agent
17                              U.S. Drug Enforcement Administration

18

19

20

21

22

23

24